UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE CHRISTOPHER SMOLINSKY,<br>Petitioner, | )<br>)<br>)<br>)  Civil Action No. 16-10840<br>) |

**PETITION FOR RELIEF FROM EMPLOYMENT
DISQUALIFICATION PURSUANT TO THE
LABOR MANAGEMENT REPORTING AND DISCLOSURE ACT**

### I.   Introduction

1. Petitioner, Christopher Smolinsky ("Smolinsky"), petitions this Court pursuant to the Labor Management Reporting and Disclosure Act, 29 U.S.C. §504(a) ("LMRDA"), for relief from the 13-year statutory disqualification from his capacity to serve as a labor organizer for the Teamsters Union.  Petitioner has been disqualified from his employment as a labor organizer under the LMRDA because of a state criminal conviction of larceny over $250 in the Fall River District Court, which is a disqualifying offense under the statute.  The facts leading to his conviction occurred over 11 years ago; the conviction itself occurred over 10 years ago; and Petitioner completed his county sentence on the conviction almost 9 years ago.  The conduct that led to the conviction did not concern union activities, as Petitioner was not a union member at the time of that conduct, conviction, or sentence—indeed, Petitioner would not become a labor organizer until approximately 10 years after that conduct.  As set out below, Petitioner seeks relief from his disqualification on the basis that he has been "rehabilitated" in accordance with the LMRDA, and accordingly his employment as a labor organizer would not be contrary to the purposes of the LMRDA.  The relief Petitioner seeks from this Court is warranted.

## II. The Parties

2. Petitioner, Christopher Smolinsky ("Petitioner"), is a citizen of the United States and a resident of Pembroke, Massachusetts.

3. Potential Respondents, as directed in the LMRDA, include the Department of Labor and the District Attorney of Bristol County, where Petitioner was convicted of the offense causing his disqualification from union employment as a labor organizer.

## III. Jurisdiction and Venue

4. The LMRDA confers jurisdiction over this action in the district of the United States District Court where the underlying conduct occurred.

5. The conduct leading to Petitioner's conviction occurred in Bristol County, Massachusetts and therefore venue in this District is appropriate.

## IV. Statement of Facts

6. Petitioner began his employment as a labor organizer for the Teamsters Local 25 in February 2015. (¶ 2).[1]

7. Petitioner was a member of the Teamsters from 1997 to 2001, and then again from 2008 to the present. He did not work for, and was not affiliated with, any union after leaving the Teamsters in 2001, until he returned to the Teamsters in 2008. Petitioner became a labor organizer approximately six years later in February 2015. (¶ 2).

8. As a labor organizer, Petitioner's primary responsibility was to identify unrepresented workers who may benefit from union membership. Petitioner would then advocate

---

[1] All references in the form "¶ ___" correspond to the numbered paragraphs in the Affidavit of Christopher Smolinsky filed herewith.

for and provide assistance to them in efforts to achieve union representation. Petitioner regularly met with workers, educated them concerning their rights, targeted and developed their leadership skills, explained the union organizing process, and ran campaigns for union recognition. Petitioner's goal in these activities was for workers to win a binding agreement with their employers that achieved real improvements in both living and working conditions. (¶ 3).

9. On January 29, 2016, the District Director of the United States Department of Labor ("DOL"), Jonathan Russo, sent Petitioner a letter informing him that he was disqualified, pursuant to the LMRDA, from continuing as a labor organizer. (A true copy of the letter is attached at Ex. 1). The LMRDA prohibits anyone convicted of an enumerated felony from serving as a labor organizer for a period of 13 years following conviction or sentence. (¶ 4).

10. The DOL based its decision disqualifying petitioner on his conviction for larceny over $250 (in violation of M.G.L. c. 266, § 30) in the Fall River District Court in 2006, where Petitioner pleaded guilty to theft of video games and movies from a Blockbuster video store. (¶ 5).

**The Underlying Conviction**

11. The conduct underlying Petitioner's conviction occurred on April 18, 2005. (¶ 6).

12. At the time, Petitioner was unemployed and struggling with substance abuse. (¶ 7).

13. Petitioner entered a plea to the larceny charge on January 31, 2006. He accepted responsibility for stealing video games and movies estimated in the police report to be valued at approximately $1000. Petitioner's conduct was to support his then-existing drug habit. He was sentenced to one year in the House of Correction. (¶ 8).

14.     Petitioner was not immediately identified as the perpetrator.  Rather, three days after the theft on April 21, 2005, Petitioner's substance abuse led to a serious car accident.  Petitioner's girlfriend Danielle Foley (now his wife with the surname Smolinsky) and his young nephew were in the car and suffered injuries.  The stolen merchandise from Blockbuster was found in the car and led to Petitioner's identification.  (¶ 9).

15.     As a result of the accident, Petitioner was arrested in Plymouth County and later pleaded guilty in Hingham District Court on April 7, 2006, to operating under the influence of drugs causing serious injury.  Petitioner was sentenced to two years in the House of Correction, concurrent with his sentence on the larceny matter. (¶ 10).

16.     Petitioner was incarcerated from April 21, 2005 (the date of his arrest in Hingham) to July 2, 2007 (the end date of his sentence on the Hingham matter).  (¶ 11).

17.     While incarcerated, Petitioner began a long road to recovery.  (¶ 12).

18.     On January 3, 2007, Petitioner earned his graduate equivalency degree (GED). (A true copy of Petitioner's GED diploma is attached at Ex. 2). (¶ 13).

19.     Upon his release on July 2, 2007, Petitioner had hopes of starting a new life.  His girlfriend became pregnant.  Despite best intentions, however, Petitioner soon realized that substance abuse was again taking hold.  He was compliant with the terms of his probation, which included drug testing, but he began to abuse alcohol.  (¶ 14).

20.     Petitioner realized he was at risk of again succumbing to addiction, and with a child on the way, took significant steps to get control of his substance abuse.  The steps Petitioner took successfully set his life on a new footing. (¶ 15).

**Petitioner's Rehabilitation**

21.     In January 2008, Petitioner voluntarily admitted himself into a two-week detoxification program called Highpoint in Brockton Massachusetts. (¶ 16).

22.     Petitioner then transferred to another Highpoint location in Plymouth for further treatment for an additional two-week period.  (¶ 17).

23.     Petitioner then went to a Highpoint program called Transitional Support Services in New Bedford and waited for space to open in a longer-term residential aftercare program. (¶ 18).

24.     On February 5, 2008, Petitioner went to Answer House, a four- to six-month residential rehabilitation program in South Boston.  Answer House is licensed and regulated by the Massachusetts Department of Public Health.  During his stay there, Petitioner regularly attended community Alcoholics Anonymous ("AA") meetings, participated in house group meetings and engaged in substance abuse counseling.  Petitioner underwent drug testing three times per week. (A true copy of a letter from Answer House dated June 9, 2008 concerning Petitioner's admission and graduation from the program is attached at Exhibit 3). (¶ 19).

25.     During the Spring of 2008 Petitioner also began to work, finding a job with a contractor.  (¶ 20).

26.     Petitioner graduated from Answer House in the minimum time of four months on June 6, 2008. (A true copy of Petitioner's Certificate of Completion from Answer House dated June 6, 2008 is attached at Ex. 4). (¶ 21).

27.     By January 2008, Petitioner was sober and drug-free, and he has remained sober and drug-free since.  (¶ 22).

28. Petitioner and his wife have two children. His oldest son was born in 2008; his younger son was born in 2013. The family owns a home in Pembroke, where Petitioner's children attend school, participate in sports, and pursue other enriching activities. (¶ 23).

29. In May of 2008, while Petitioner was still at Answer House and working for the contractor, a fellow union worker from the Teamsters recognized Petitioner standing on the street in South Boston. He suggested Petitioner return to the union, which Petitioner did in May 2008 as a mover and trade show worker. (¶ 24).

30. After rejoining the union, Petitioner soon became interested and involved. He attended union programs in order to educate himself about the history of the labor movement and its importance. He also became increasingly involved in union programs and outreach activities. (¶ 25).

31. Petitioner has been a standout member of his union and deeply involved in the union's mission of community service. He has repeatedly been recognized in union publications for his outreach to the community. (A true copy of excerpts from The Spokesman, a Local 25 publication, acknowledging Petitioner's union duties and community outreach is attached at Ex. 5). (¶ 26).

32. For example, Petitioner participates in Operation Exit, a program organized by the Mayor of Boston that trains at-risk and previously convicted men and women in the building trades. The program offers constructive alternatives to crime, drugs, and other social ills by providing training in essential job skills and practical trades such as welding and sheet metal work. Program participants also receive certifications in workplace safety, first aid, and CPR. After graduating from the program, participants are encouraged to interview with unions in building trades. (¶ 27).

33. In addition to his work in Operation Exit, Petitioner and others founded and organized the "Futures Committee" at his union, which encourages younger union members to become involved in community service activities and the labor movement as a whole. At its founding, Petitioner served as Vice-Chair of the Futures Committee and, approximately six months later in mid-2014, he became its Chair. (¶ 28).

34. Petitioner's contributions to the Futures Committee include raising money for the purchase of toys for children in foster care and DCF custody. Petitioner also participates in the well-known Toys for Tots drive at Christmas. Petitioner collects and sorts boxes of toys from approximately 250 collective bargaining units and delivers the toys to underprivileged children. (¶ 29).

35. At the beginning of 2015, Petitioner became involved in the union's fundraising and outreach for people afflicted with autism. He participated in planning the yearly "Light Up the Night" gala and other fundraising efforts by soliciting donations from area businesses. Petitioner spent up to 10 hours per week at these fundraising efforts. (¶ 30).

36. Petitioner is also involved in the Nathan Hale Veterans Outreach Center "Three Harts Foundation," a fundraising effort for veterans of the armed services. One project at the organization was to open a farm for veterans with disabilities in Plymouth, Massachusetts. During the summer of 2015, Petitioner spent two days clearing the land at the Plymouth property. Another project was collecting winter hats and gloves and donating them to the Foundation. Petitioner is still active with the Foundation; on June 12, 2016, Petitioner plans to bring workers back to Plymouth to assist in a construction project. (A true copy of a letter dated February 22, 2016 from Christopher C. Hart, President and Founder of Nathan Hale Foundation, is attached at Ex. 6). (¶ 31).

37. Every other month, Petitioner donates a Saturday volunteering at the Red Cross blood bank at his union hall.  (¶ 32).

38. Inside and outside the union, Petitioner's actions demonstrate a commitment to civic engagement, community service, and social betterment.

39. In March 2012 Petitioner suffered a serious injury while on the job. As he reached down to pick up something off the floor a razor blade cut deeply into his hand.  The injury required surgery, and Petitioner suffered significant nerve damage.  (¶ 33).

40. Petitioner did not allow his inability to use his hand to set him back. Instead, he enrolled at Massasoit Community College in the fall of 2013, where he studied business management as a full-time student. (A true copy of an unofficial transcript from Massasoit Community College is attached at Ex. 7). (¶ 34).

41. Petitioner reluctantly left school before earning a degree only because he was offered and urged by the political organizer of his union to take a job as a labor organizer in February 2015. (¶ 35).

42. Petitioner continues to seek educational opportunities where available, often relating to his work as a union member and organizer.  (A true copy of a Certificate of Completion from the Labor Guild, School of Labor Management Relations in Braintree, MA on the subject of Building Trade Issues dated November 9, 2015 is attached at Ex. 8); (A true copy of a Certificate of Completion from the 2014 Teamsters Leadership Academy in the subject of Arbitration: Building Skills, Knowledge, and Confidence presented on November 18-20, 2014 is attached at Ex. 9). (¶ 36).

43. At the same time, Petitioner has been vigilant in ensuring that he has the proper support to protect against the perils of substance abuse.  He regularly attends AA meetings,

usually three meetings per week. When he found other networks of support, Petitioner joined those as well, including the RAFT program (Referral and Follow-Up Team) in 2011, which is a recovery program unaffiliated with the union that supports other recovering substance abusers. As Petitioner's sobriety achieved solid footing, he began sponsoring other men in their own quest for sobriety, a role that Petitioner maintains today. (A true copy of a letter from Michael T. McLaughlin regarding Petitioner's sponsorship is attached at Ex. 10); (A true copy of a letter from David Rolfe dated March 1, 2016 regarding Petitioner's sponsorship is attached at Ex. 11); (A true copy of a letter from Larry Libby of RAFT concerning Petitioner's participation is attached at Ex. 12). (¶ 37).

44. In 2015, Petitioner was distributing leaflets concerning an organizing effort by a business near the Massachusetts Federal Courthouse in Boston. He was approached by the Assistant United States Attorney who was at the time prosecuting leaders of the Union Local 82. The U.S. Attorney praised Petitioner for the manner in which he was conducting himself. Petitioner soon thereafter received a trial subpoena from the U.S. Attorney's office to testify for the government in the case against the Union members who were being prosecuted. Ultimately, Petitioner was not called as a witness. (¶ 38).

45. Petitioner believes this chance encounter likely resulted in the DOL's discovery that he had a felony conviction in 2006, and his ultimate disqualification from his role as labor organizer.[2] (¶ 39).

46. Petitioner has reconstructed his life after overcoming crippling drug dependency. The felony conviction underlying his disqualification was the result of severe drug addiction and

---

[2] Petitioner was completely unaware of the LMRDA and its statutory disqualification to his serving as a labor organizer until he received the DOL letter. ¶ 40 of Affidavit.

in no way implicates the types of concerns that Congress sought to address by the LMRDA.  (¶ 41).

47.     Nonetheless, Petitioner has rehabilitated himself and has demonstrated through a clear and uninterrupted path since 2008 that his serving as a labor organizer is not contrary to the LMRDA.  Teamsters Local 25 President has written to this Court urging that Petitioner be allowed to return to his position.  (A true copy of a letter from Teamsters Local 25 President / Principal Officer Sean M. O'Brien dated March 3, 2016 is attached at Ex. 13). (¶ 42).

## V.     Argument

48.     Petitioner brings this Petition pursuant to the provisions of the LMRDA that provide for relief in appropriate cases from disqualification from union employment.

49.     The LMRDA [29 U.S.C. 504 §504(a)], titled "Prohibition against certain persons holding office," provides in relevant part:

> "No person…who has been convicted of, or served any part of a prison term resulting from his conviction of…grand larceny…shall serve or be permitted to serve—…(2) as an… organizer…of any labor organization…during or for the period of thirteen years after such conviction or after the end of such imprisonment, whichever is later, unless…if the offense is a State or local offense, the United States district court for the district in which the offense was committed, pursuant to sentencing guidelines and policy statements under section 994(a) of title 28, United States Code, determines that such person's service in any capacity referred to in clauses (1) through (5) would not be contrary to the purposes of this Act.  Prior to making any such determination the court shall hold an administrative hearing and shall give notice of such proceeding by certified mail to the Secretary of Labor and to State, county and Federal prosecuting officials in the jurisdiction or jurisdictions in which such person was convicted.

50.     The applicable policy statement referenced in the Federal Sentencing Guidelines, 18 U.S.S.G. §5J1.1 – titled "Relief From Disability Pertaining to Convicted Persons Prohibited from Holding Certain Positions (Policy Statement)" – provides in relevant part:

> If the petitioner was convicted of a disqualifying state or local offense, the petition is directed to the United States District Court for the district in which the offense was committed.  In such cases, relief shall not be given to aid rehabilitation, but may be granted only following a clear demonstration by the convicted person that he or she has been rehabilitated since commission of the disqualifying crime and can therefore be trusted not to endanger the organization in the position for which he or she seeks relief from disability.

51.     Thus, this Court may relieve Petitioner from the 13-year bar if he can demonstrate that his service as a labor organizer would not be contrary to the purposes of the LMRDA.  In accordance with the applicable sentencing guideline, Petitioner must make "a clear demonstration…that he or she has been rehabilitated since commission of the disqualifying crime and can therefore be trusted not to endanger the organization in the position for which he or she seeks relief from disability." 18 U.S.S.G. §5J1.1.

52.     Petitioner is exactly the candidate for the relief envisioned by Congress when it enacted the LMRDA.  Petitioner's criminal conduct occurred over a decade ago, the conduct was unrelated to union activities, and he was not employed by or affiliated with any union at the time of the conduct.  The motivating factor for the larceny at issue – substance abuse – has long been addressed, and Petitioner has been completely sober and drug-free since 2008.  Petitioner's clean criminal record since 2005 and complete sobriety since 2008 demonstrate that Petitioner and his family have a new lease on life, and Petitioner's recent contributions to both the union and the greater community have directly improved the lives of others.  The facts show that Petitioner turned his life around after making poor choices at a younger age, and now – rather than helping only himself – he is committed to assisting others in improving their personal and professional lives.

53.     Petitioner's transformation from a non-union member who committed theft while struggling with substance abuse into a sober, hardworking, and law abiding labor organizer

concerned about advancing the goals of labor and improving the social good is precisely the circumstance contemplated by Congress when enacting the exemptions to the 13-year bar.

54. Petitioner does not dispute that his conviction for larceny over $250 disqualifies him from continuing to serve as a union organizer.

55. However, Petitioner's offense, committed because of a serious drug addiction at a time when he was not employed by the union, is not the type offense Congress envisioned should result in a 13-year bar from working as a labor organizer.

56. Indeed, DOL and the Department of Justice ("DOJ"), in its response in the case of United States of America v. Alexander Cullison, Cr. No. 1:93-cr-001117 (Dist. of D.C. 1993), filed in 2005, appear to agree. In their Joint Memorandum of Departments of Labor and Justice in Opposition to Defendant's Request for Reduction of Disability Under 29 U.S.C. § 504 (attached at Ex. 14), DOL and DOJ stated its position on this issue through citation of a portion of the legislative history of the 1984 amendments to the LMRDA, which describes the type of circumstance the DOL and DOJ believed Congress envisioned would warrant a reduction in the 13-year bar:

> The sponsors of the 1984 amendments noted that relief through a reduction in the thirteen-year term should be available only on:
>
> [t]he rare occasions where a [thirteen] year ban might be considered too harsh. For example, at the time of his conviction of a disqualifying crime, an individual might not be a union member or might not have given any thought to the ramifications of his act with regard to holding office in a union or with a benefit plan. If he were to serve his sentence and subsequently obtain a job which would lead to election to … office, a [thirteen] year ban might be unnecessarily rigid. In such rare circumstances, the judge is given the discretion to reduce the disqualification period….

Joint Memorandum of Departments of Labor and Justice in Opposition to Defendant's Request for Reduction of Disability Under 29 U.S.C. § 504, p. 6, quoting Remarks of Senator Orrin Hatch at 128 Cong. Rec. 32446 (1982).

12

57. The circumstance contemplated in the legislative history to the 1984 amendment for a reduction of the disqualification period is precisely the one presented by Petitioner here.

58. His disqualifying crime not only occurred when he was not even employed by the union, but also at a time when certainly he was not in a position to give "any thought to the ramifications of his act with regard to holding office in a union…", and he was in the throes of addiction.

59. There can also be no doubt that Petitioner's life has undergone a remarkable turnaround and the time that has passed—nearly 11 years—shows that it is not a temporary and precarious state, but a stable and long-lasting one.

60. Petitioner has proved that he has been rehabilitated and that his employment as a labor organizer for the Teamsters Union are not contrary to the purposes of the LMRDA.

## VI.     Prayer for Relief

WHEREFORE, Petitioner prays that this Court grant the following relief:

1. Determine that Petitioner's service in a union in any capacity would not be contrary to the purposes of the LMRDA; and

2. Order that Petitioner's disqualification pursuant to the LMRDA is terminated and that he may forthwith resume his position as a labor organizer for the Teamsters Union.

Respectfully submitted,
CHRISTOPHER SMOLINSKY
By his attorneys,


 /s/ Jeffrey Wiesner
Jeffrey Wiesner
BBO# 655814
Shapiro, Weissberg and Garin, LLP

        90 Canal Street
Boston, Massachusetts 02114
Tel: (617) 742-5800
Fax: (617) 742-5858
Email: jwiesner@swglegal.com


 /s/ David Grimaldi
David Grimaldi
BBO#  669343
David J. Grimaldi, P.C.
675 Massachusetts Avenue, 9th Floor
Cambridge, MA 02139
Tel: (617) 661-1529
Fax: (857) 362-7889
Email: david@attorneygrimaldi.com


Dated:  May 5, 2016